686 F.2d 731
 111 L.R.R.M. (BNA) 2254, 111 L.R.R.M. (BNA) 2502,
95 Lab.Cas. P 13,730
 McCLATCHY NEWSPAPERS, d/b/a The Sacramento Bee, a California
corporation, Plaintiff-Appellant,
v.
CENTRAL VALLEY TYPOGRAPHICAL UNION NO. 46, INTERNATIONAL
TYPOGRAPHICAL UNION, Defendant-Appellee.
 Nos. 80-4597, 81-4117.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1982.
July 14, 1982.
As Amended on Denial of Rehearing and Rehearing En Banc
Sept. 22, 1982.
 
 Allen W. Teagle, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff-appellant.
 Duane B. Beeson, Beeson, Tayer, Kovach & Silbert, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before WALLACE, KENNEDY and CANBY, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 This case presents consolidated appeals brought by McClatchy Newspapers (the publisher). The first appeal is from a judgment of the district court confirming an arbitration award in favor of Central Valley Typographical Union No. 46 (the union), a local of the International Typographical Union. While that appeal was pending, the district court entered an amended judgment which reaffirmed the original decision and made additional directives. The second appeal is from the amended judgment. We affirm the original judgment of the district court and vacate the amended judgment.
 
 
 2
 * On November 20, 1973, the parties executed an agreement (the Scanner Agreement), a principal feature of which was the guarantee of lifetime jobs to named composing room employees. The guarantee was subject to the following qualifications:
 
 
 3
 (Named) composing room employees will be retained in the employment of the Publisher( ) ... for the remainder of their working lives unless forced to vacate ... through retirement, resignation, death, permanent disability, or discharge for cause; provided, however, in the event of permanent suspension of (the) Publisher's composing room operation, such employment guarantee will thereupon cease. In case of a strike or lockout, such employment guarantee shall immediately cease and continuance of this Agreement will be contingent upon the terms of a negotiated strike or lockout settlement ....
 
 
 4
 On April 17, 1978, the Sacramento Mailers Union Local 31 (the mailers), another local of the International Typographical Union, struck the publisher. Some of the composing room employees named in the Scanner Agreement, observing the mailers' picket line, left their work stations prior to quitting time and subsequently refused to cross the picket line. Some also joined the mailers' picketing activities.
 
 
 5
 The publisher asserted that these activities terminated the job guarantees of those employees who participated in the sympathy strike. The union disagreed. The parties submitted the question to arbitration. The stipulated issue submitted to the arbitrator was
 
 
 6
 (w)hether the job guarantees provided in paragraph 1 of the 1973 Memorandum Agreement between the Sacramento Bee and Central Valley Typographical Union # 46 ceased for any or all of the employees covered by that Agreement by reason of the strike which began April 17, 1978.
 
 
 7
 On August 10, 1979, the arbitrator issued his decision. He concluded that the word "strike" in the Scanner Agreement referred only to a primary strike and that the sympathy strike did not terminate the job guarantees. Eight months later the publisher requested that the arbitrator reopen the proceedings to receive new evidence. The arbitrator denied the request. The district court confirmed the arbitration award, and the publisher appealed.
 
 
 8
 Following the district court's decision, the union renewed its demand that the composing room employees be allowed to return to work. According to the union, the district court's order enforcing the arbitrator's decision compelled immediate reinstatement. The publisher disagreed. On February 6, 1981, the union filed a motion for an order adjudicating the publisher's civil contempt. The publisher opposed this motion contending that neither the arbitration award itself nor the district court's confirmation of the award compelled immediate reinstatement. The district court denied the motion, but, pursuant to Fed.R.Civ.P. 62(c), entered an amended order confirming the original award and requiring the publisher to return the composing room employees to their original or equivalent positions.
 
 
 9
 This appeal presents the following issues: whether the arbitrator acted within the authority conferred upon him by the parties, whether the arbitrator properly refused to reopen the record, whether the district court had jurisdiction to enter an amended judgment while the appeal of its original judgment was pending, and whether the district court properly ordered reinstatement of the composing room employees.
 
 II
 
 10
 Review of an arbitration award is limited. Plenary review of the merits of an arbitration award would undermine the federal policy of settling labor disputes by arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Nevertheless, we may determine whether the parties "agree(d) to give the arbitrator the power to make the award he made," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), and whether the award drew its essence from the agreement submitted for arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361. See Syufy Enterprises v. Northern California State Ass'n of I.A.T.S.E. Locals, 631 F.2d 124 (9th Cir. 1980), cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).
 
 
 11
 The publisher argues that the arbitrator exceeded his powers when he interpreted the term "strike" to encompass only primary strikes. We disagree. The arbitrator's interpretation of the term was essential to his resolution of the issue submitted to him. By empowering the arbitrator to decide whether the job guarantees ceased by reason of the April 17, 1978, strike, the publisher implicitly agreed to have the arbitrator interpret the scope of the words "strike or lockout" in the Scanner Agreement. The publisher also argues that the award does not draw its essence from the Scanner Agreement. We again disagree. The arbitrator's award "represents a plausible interpretation of the contract." Riverboat Casino, Inc. v. Local Joint Executive Board, 578 F.2d 250, 251 (9th Cir. 1978), quoting Holly Sugar Corp. v. Distillery Union, 412 F.2d 899, 903 (9th Cir. 1969).
 
 III
 
 12
 The publisher also argues that the award should not be confirmed because the arbitrator improperly refused to reopen the proceedings to consider newly available evidence eight months after the award issued. We conclude that the arbitrator acted properly. "Arbitrators are not and never were intended to be amenable to the 'remand' of a case for 'retrial' in the same way as a trial judge." Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1238 (D.C.Cir.1971). Even assuming the availability of new evidence, it would not be appropriate for the arbitrator to consider such evidence and then redetermine the issues originally submitted to him.It is (a) fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion. The continuity of judicial office and the tradition which surrounds judicial conduct is lacking in the isolated activity of an arbitrator, although even here the vast increase in the arbitration of labor disputes has created the office of the specialized professional arbitrator.
 
 
 13
 La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 572 (3d Cir. 1967). See Mercury Oil Refining Co. v. Oil Workers Int'l Union, 187 F.2d 980, 983 (10th Cir. 1951).[1]
 
 IV
 
 14
 The publisher further argues that the district court was without jurisdiction to enter its amended judgment. We agree. When a judgment is appealed, jurisdiction over the case passes to the appellate court. The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed. Davis v. United States, 667 F.2d 822, 824 (9th Cir. 1982); Taylor v. Wood, 458 F.2d 15, 16 (9th Cir. 1972); Sumida v. Yumen, 409 F.2d 654, 656-57 (9th Cir. 1969), cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972). Certain exceptions to the rule have been recognized.[2] Only one of those exceptions, which is codified in Fed.R.Civ.P. 62(c), is arguably applicable in this case. That rule provides in part:
 
 
 15
 When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.
 
 
 16
 Rule 62(c) is "merely expressive of a power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify." 7 J. Moore, Moore's Federal Practice P 62.05, at 62-19 to 20 (2d ed. 1979). It does not restore jurisdiction to the district court to adjudicate anew the merits of the case after either party has invoked its right of appeal and jurisdiction has passed to an appellate court. Rule 62(c) codifies the "long established" and narrowly limited right of a trial court "to make orders appropriate to preserve the status quo while the case is pending in (an) appellate court." United States v. El-O-Pathic Pharmacy, 192 F.2d 62, 79 (9th Cir. 1951). "(A)fter appeal a trial court may, if the purposes of justice require, preserve the status quo until decision by the appellate court.... But it may not finally adjudicate substantial rights directly involved in the appeal." Newton v. Consolidated Gas Co., 258 U.S. 165, 177, 42 S.Ct. 264, 267, 66 L.Ed. 538 (1922) (citations omitted) (statement of the rule prior to its codification), citing Hovey v. McDonald, 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883), and Merrimack River Savings Bank v. Clay Center, 219 U.S. 527, 534, 31 S.Ct. 295, 296, 55 L.Ed. 320 (1911).
 
 
 17
 In the present case, the district court's amended judgment was not addressed to maintenance of the status quo during pendency of the appeal; in fact, by ordering the publisher to reinstate employees who were not working when the appeal was filed, the amended judgment required a change from the status quo. Furthermore, the district court's order was not limited to the period of the appeal from the initial judgment. If we were to affirm the district court's amended judgment, the order would affect substantial rights of the parties after appeal. The arbitrator's ruling was limited to a finding that the job guarantees survive the sympathy strike; it was not necessarily a determination that the remedy of reinstatement is appropriate. The district court's original judgment, confirming the arbitrator's award, therefore was an adjudication only of the survival of job guarantees. In its amended judgment, however, the district court adjudicated the reinstatement issue, thus materially affecting substantial rights of the parties not decided in its original disposition of the case. This matter must abide further inquiry, either by arbitration or by appropriate judicial proceedings, in which each party has the opportunity for a full and fair presentation of its case. We therefore conclude that the district court's amended judgment does not fall within the authority of Rule 62(c).
 
 
 18
 The union argues that the general rule governing jurisdiction is inapplicable because the district court's amended judgment falls within the exception articulated in Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268, 1276 (9th Cir. 1976). There we held that an appeal from a contempt order does not divest the district court of jurisdiction to issue further contempt orders based on subsequent violations of a basic injunctive order, even though later orders may effectively modify the original contempt order. We observed that the general rule that an appeal to the circuit court deprives a district court of jurisdiction should not be applied in those cases where the district court has a continuing duty to maintain the status quo. Id. "(W)here the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken." Id.
 
 
 19
 Hoffman is only an extension of the result achieved by Fed.R.Civ.P. 62(c): just as an appeal from an order granting an injunction does not deprive the district court of jurisdiction to alter the injunction for purposes of maintaining the status quo, an appeal of a contempt order issued to force compliance with an injunction should not divest the court of jurisdiction to modify that order to achieve the same enforcement purpose. Here the appeal came from the district court's confirmation of the arbitration award, and not from a contempt order (or other supervisory action) that was issued to force compliance with that earlier confirmation. The union is incorrect in arguing that this case falls within the limited exception articulated in Hoffman.
 
 
 20
 We therefore conclude that the amended judgment was rendered without jurisdiction and must be vacated. Our disposition of the amended judgment on jurisdictional grounds obviates any need for review of the merits. We therefore decline to decide whether, had there been jurisdiction, the district court could properly have ordered reinstatement.
 
 
 21
 AFFIRMED IN PART; VACATED IN PART.
 
 
 
 [1]
 The principle that an arbitration award once rendered is final has been held to contain some limitations. It has been recognized in common law arbitration that an arbitrator can correct a mistake which is apparent on the face of his award, complete an arbitration if the award is not complete, and clarify an ambiguity in the award. E.g., La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir. 1967). Remand to an arbitrator for clarification and interpretation is not unusual in judicial enforcement proceedings. E.g., Hanford Atomic Metal Trades Council v. General Electric Co., 353 F.2d 302, 308 (9th Cir. 1965). Recommitting an issue to an arbitrator for clarification and interpretation does not effectuate an appeal to the arbitrator, a new trial, or an opportunity to relitigate the issue. Id. See Randall v. Lodge No. 1076, Int'l Ass'n of Machinists and Aerospace Workers, 648 F.2d 462, 468 (7th Cir. 1981). None of these situations are "within the policy which forbids an arbitrator to redetermine an issue which he has already decided." La Vale Plaza, Inc. v. R. S. Noonan, Inc., supra, 378 F.2d at 573. These cases do not apply here because the publisher wishes to introduce new evidence for the specific purpose of convincing the arbitrator that his decision was erroneous
 
 
 [2]
 For example, a district court may retain jurisdiction under specific statutory authority, Davis v. United States, 667 F.2d 822, 824 (9th Cir. 1982); a district court may also act to assist the court of appeals in the exercise of its jurisdiction. Id.; see Securities & Exchange Comm'n v. Investors Security Corp., 560 F.2d 561, 568 (3d Cir. 1977)