NATURAL RESOURCES DEFENSE COUNCIL, INC.; San Diego Baykeeper, Inc.; Kenneth J. Moser, Plaintiffs–Appellees,

v.

SOUTHWEST MARINE INCORPORATED, Defendant–Appellant.

No. 00–55621.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2001

Filed March 20, 2001

See also, 236 F.3d 985.

David L. Mulliken; Dorn G. Bishop, Latham & Watkins, San Diego, California, for the defendant-appellant.

Charles S. Crandall, San Luis Obispo, California; Everett L. DeLano, II, San Marcos, California, for the plaintiffs-appellees.

Before: PREGERSON, CANBY and DAVID R. THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

This is the third appeal by Defendant Southwest Marine, Inc., arising from an action brought against it by Plaintiffs Natural Resources Defense Council, San Diego Baykeeper, and Kenneth J. Moser un-

der the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365(a). Southwest Marine's first two appeals, challenging the district court's judgment in favor of Plaintiffs and the imposition of injunctive relief and a civil penalty, were consolidated and earlier heard by this court, which affirmed the district court. *See Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir.2000). In this appeal, Southwest Marine challenges for lack of jurisdiction and abuse of discretion the district court's modification, while the consolidated appeal was pending, of certain of the injunctive measures contained in the original judgment. We conclude that the district court had jurisdiction and discretion to make the post-appeal modifications, which slightly modified and enforced the injunction, to preserve the status quo. Accordingly, we affirm.

## I.

For a comprehensive procedural history and factual background of this Clean Water Act enforcement action, we refer the reader to Judge Graber's opinion resolving the consolidated appeal of the original judgment. *See Natural Resources Defense Council*, 236 F.3d at 990–94. We set forth here only a general overview of the litigation and the background necessary to an understanding of this subsequent, limited appeal of the district court's post-judgment modifications to the injunction.

Southwest Marine repairs and maintains marine vessels at its shipyard on San Diego Bay. Work is conducted at its five piers and two floating dry docks. Shipyards like Southwest Marine's generate pollutants, including paint chips, abrasive grit, and "antifouling paints" that prevent growth of aquatic organisms on ships and are toxic to aquatic life. These pollutants are discharged into adjacent waters primarily through leaks, spills, and storm water runoff. Plaintiffs sued Southwest Marine in 1996 under the Clean Water Act, alleging that Southwest Marine had not properly developed nor implemented pollution prevention plans to control its discharges into San Diego Bay as required by its various government permits.

After a trial, in a judgment dated September 7, 1999, the district court found against Southwest Marine and imposed an injunction and a civil penalty. The injunction required that Southwest Marine, *inter alia*, (1) test the water column around each vessel being blasted or painted by taking water samples "at the surface and at each 20–foot interval between the water surface and the bottom of the Bay," and (2) capture all pier storm water runoff "in a reasonably expeditious manner." The district court simultaneously issued .a limited stay. That portion of the limited stay relevant here stayed enforcement of (1) the water column testing requirement, pending further argument and briefing on whether the district court should substitute testing of the surface "microlayer" for testing "at the surface," and (2) the pier storm water capture requirement, pending further argument and evidence on possible engineering alternatives.

The district court eventually received additional briefing and held a hearing on the injunctive measures that had been temporarily stayed, but not until after Southwest Marine had appealed the original judgment, including the injunction. After the hearing, in an order dated March 7, 2000, the district court modified the injunction and lifted the stay. Among the modifications made, the district court (1) substituted testing of the surface "microlayer" for testing "at the surface," and (2) substituted an 18–month deadline (running from the March 7, 2000 order) for the requirement of "reasonably expeditious" construction of a facility to capture pier storm water runoff. Southwest Marine then brought the present appeal, challenging the district court's jurisdiction and discretion to make these two particular modifications.

While this appeal was pending, the earlier consolidated appeal was decided and an opinion issued affirming the district court's original judgment against Southwest Ma-

rine, including the injunction and the civil penalty. *See Natural Resources Defense Council,* 236 F.3d at 990. That opinion purported to affirm the injunction "in its entirety," the court having been made well aware by the parties of the district court's post-judgment modifications to the injunction. *See id.* at 1001. The issue of the district court's jurisdiction to modify the injunction, however, was neither argued nor resolved in the consolidated appeal, and thus remains to be decided here.

## II.

■ We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court's post-judgment order modifying the injunction and lifting the stay is final and appealable, because it disposed completely of the issues raised in the post-judgment proceedings. *See United States v. One 1986 Ford Pickup,* 56 F.3d 1181, 1184–85 (9th Cir.1995) (per curiam); *United States v. Washington,* 761 F.2d 1404, 1406–07 (9th Cir.1985).

## III.

■ This court reviews de novo the district court's exercise of subject matter jurisdiction. *Burlington N. Santa Fe Ry. Co. v. International Bhd. of Teamsters Local 174,* 203 F.3d 703, 707 (9th Cir.2000) (en banc). We conclude that the district court possessed jurisdiction to modify the injunction while the consolidated appeal was pending, because the changes preserved the status quo and did not materially alter the status of the case on appeal.

■ Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir. 1982). This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. *Masalosalo v. Stonewall*

*Ins. Co.,* 718 F.2d 955, 956 (9th Cir.1983); 20 James Wm. Moore, *Moore's Federal Practice,* § 303.32[1] (3d ed.2000). The principle of exclusive appellate jurisdiction is not, however, absolute. *Masalosalo,* 718 F.2d at 956; 20 *Moore's* § 303.32[2][b]. The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo. *Newton v. Consolidated Gas Co.,* 258 U.S. 165, 177, 42 S.Ct. 264, 66 L.Ed. 538 (1922); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir. 1976); *United States v. El–O–Pathic Pharmacy,* 192 F.2d 62, 79 (9th Cir.1951).

■ This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure, which allows a district court to "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers,* 686 F.2d at 734. Thus, any action taken pursuant to Rule 62(c) "may not materially alter the status of the case on appeal." Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed,* 143 F.R.D. 307, 322 (1992).

In this case, both of the district court's challenged modifications to the injunction preserved the status quo. The status quo as of the filing of Southwest Marine's consolidated appeal required Southwest Marine to conduct water column testing, including testing "at the surface," and to take steps to capture storm water runoff from piers "in a reasonably expeditious manner." The purpose of the water column testing is to determine whether blasting or painting operations conducted by Southwest Marine on each vessel in dry

dock or at pier side is contributing to pollution levels in San Diego Bay. The purpose of the storm water capture requirement is to prevent Southwest Marine from discharging storm water that degrades the marine habitat of its offshore leasehold, which the district court found to be "devoid of life." The district court's post-judgment modifications to the injunction were minor adjustments that effectuated the underlying purposes of the original requirements.

The district court noted at the post-judgment hearing that the phrase "at the surface" was vague and did not ensure that Southwest Marine's water column testing would accomplish the purpose behind the requirement-finding the source of the degraded condition around the piers. Southwest Marine said at the post-judgment hearing that it had been conducting water column testing, but could not tell the district court precisely how much of the surface layer it was capturing in its samples-e.g., whether it was scooping down below the surface as far as several inches to take its surface samples. By defining "at the surface" to mean the surface "microlayer," defined as the top 50 micrometers of the water column, the district court ensured that Southwest Marine's surface samples accurately measured the pollutants temporarily resting on the film atop the water column, as originally intended. Although the district court did not find the phrase "in a reasonably expeditious manner" to be vague, Southwest Marine did. Southwest Marine itself raised the issue of the timeline, at the post-judgment hearing, specifically requesting the district court to "clarify the timing of the implementation" of the pier storm water capture requirement. The district court obliged by specifying that the pier storm water capture facility must be built within 18 months of the May 7, 2000 order, to comply with the "reasonably expeditious" standard.

These modifications did not materially alter the status of the consolidated appeal. They left unchanged the core questions before the appellate panel deciding the consolidated appeal: whether the district could permissibly (1) require any water column testing, including testing "at the surface," or (2) require the construction of a pier storm water capture facility. This case is accordingly distinguishable from *McClatchy Newspapers*, where the district court amended its original judgment, in which it had affirmed an arbitrator's decision that a guarantee of lifetime employment survived a sympathy strike, to require reinstatement of the striking employees. 686 F.2d at 732–33. The reinstatement issue had not received a full and fair hearing, was not before the appellate court, and could not be undone by the appellate court's ultimate reversal of the arbitrator's decision. *Id.* at 735 (noting that affirmance of the district court's amended judgment "would affect substantial rights of the parties after appeal"). Thus, the reinstatement order had impermissibly altered the status of the case on appeal. Southwest Marine's case presented a very different situation. If the core requirements of water column testing and pier storm water capture were ultimately reversed on appeal, the "microlayer" testing requirement and the 18–month construction deadline would also effectively be reversed, leaving none of Southwest Marine's substantial rights affected after the conclusion of the consolidated appeal. Southwest Marine had a full and fair hearing on these core issues before the district court and before the appellate panel deciding its consolidated appeal.

We are unpersuaded by Southwest Marine's conclusory assertions that the post-judgment modifications impermissibly expanded the scope of the injunction by increasing its burden on Southwest Marine. Southwest Marine argues that "microlayer" testing (1) is "significantly more onerous" than testing "at the surface;" (2) "no shipyard in the country" is required to do it; and (3) its benefits are "unclear." Yet, Southwest Marine offers no citations to the record to support its argument. Southwest Marine had the opportunity to put supporting facts in the record, by making its case against "microlayer" testing dur-

ing post-judgment proceedings. The issue of substituting testing of the "microlayer" for testing "at the surface" was specifically contemplated by the district court in its limited stay of enforcement, which required Southwest Marine to evaluate the costs and benefits of this substitution and submit its findings to the district court. The district court then heard oral argument on the issue at the post-judgment hearing. Southwest Marine presented no evidence that "microlayer" testing would increase its costs and burdens as compared to testing "at the surface." In fact, when discussing the implications of requiring "microlayer" testing with the district court at the hearing, Southwest Marine merely reiterated its objection to having to conduct any water column testing at all. With respect to redefining "at the surface" to mean the surface "microlayer," Southwest Marine told the district court, "[t]hat would be fine," and, "we don't have any objection to doing that and running that through the same tests that are being otherwise done." Thus, having provided no evidence that the "microlayer" testing requirement increased its burdens under the injunction, Southwest Marine fails to dissuade us from our conclusion that the modification was a minor adjustment of the injunction that preserved the status quo.

Southwest Marine similarly fails to persuade us that an 18–month deadline for constructing the pier storm water capture facility is more burdensome than the original "reasonably expeditious" requirement. Any argument that 18 months is an unreasonable amount of time from start to finish of construction is undermined by Southwest Marine's offer at the post-judgment hearing to build the facility in as short a time as 12 months, and by the fact that its original NPDES permit required that it control its storm water discharges into the Bay within 18 months of the issuance of the permit, or by September 17, 2000. Clearly, Southwest Marine's purpose in raising the timeline issue at the hearing was not to ensure that the time given for construction was sufficient from start to

finish, but to delay either the start or the finish long enough to avoid building the facility before the conclusion of the consolidated appeal. Southwest Marine has made no secret of this purpose, arguing to the district court and to this court on appeal that any deadline is too burdensome, including a "reasonably expeditious" requirement, so long as the pier storm water capture requirement could still be reversed on appeal. But a district court is not deprived of power to require action by a fixed date simply because that date may arrive before appeals are exhausted. If compliance with the injunction threatens to deprive a party of the benefit of a successful appeal, it is up to that party to obtain a stay of the judgment. See Holloway v. United States, 789 F.2d 1372, 1373–74 (9th Cir.1986). Southwest Marine sought such a stay in connection with its prior appeal, but was unable to convince this court that a stay should be granted. Having been denied the stay, and having failed otherwise to establish that the 18–month deadline impermissibly modifies the original injunction by increasing its burdens, Southwest Marine is properly subject to that deadline.

In sum, neither modification at issue here impermissibly altered the status quo with respect to the appeal of the injunction. Thus, the district court had jurisdiction under Rule 62(c) to make the modifications.

## IV.

■ We review for abuse of discretion a district court's orders under Rule 62(c), Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 579 (5th Cir.1996), as well as its determination of the scope of an injunction under the Clean Water Act. Natural Resources Defense Council, 236 F.3d at 1000. We conclude that the district court acted within its sound discretion to make the modest modifications to the injunction that it did.

As we pointed out in the previous section, the requirement to sample the micro-

layer was necessary to ensure control of surface pollutants, thereby serving the purposes of the Clean Water Act. The 18–month deadline allowed a reasonable time for construction of a facility to capture storm water runoff, and similarly served the purposes of the Act. The district court thus did not abuse its discretion with regard to the merits of its modifications of the injunction.

Southwest Marine attempts to raise a procedural objection, however; it contends that the district court abused its discretion by modifying the injunction to add requirements that Southwest Marine was unable to contest in its prior appeal. This point has become moot, however, because Southwest Marine has had the opportunity to contest the modifications in the present appeal.[1] We conclude, therefore, that there was no abuse of discretion, either in procedure or substance.[2]

### V.

For the foregoing reasons, the decision of the district court is

**AFFIRMED.**

---

1. In its reply brief in the prior appeal, Southwest Marine did challenge the modification requiring sampling of the microlayer.

2. Southwest Marine also argues that the modifications deprived it of a right to have the ambiguous terms of the original injunction construed in its favor in the prior appeal. It relies on *Ford v. Kammerer*, 450 F.2d 279 (3d Cir.1971). The right recognized in *Ford*, however, was the right of a person charged with criminal contempt for violation of an injunction to have ambiguous terms construed in his favor; the case is wholly inapplicable here. Southwest Marine cites no authority depriving the district court of power further to define the injunction's terms in order to preserve the status quo. As we have pointed out, Rule 62(c) permits such modification. *See McClatchy Newspapers*, 686 F.2d at 734.