Karluk M. **MAYWEATHERS**; Dietrich J. Pennington; Jesus Jihad; Terrance Mathews; Aswad Jackson; Ansar Kees, Plaintiffs–Appellees,

v.

Anthony C. **NEWLAND**, individually and in official capacity; Barry Smith, individually and in his official capacity; Cal A. Terhune; N. Bennett; M.E. Valdez, Defendants–Appellants.

Nos. 00–16708, 01–15170

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2001

Filed Aug. 2, 2001

---

See also, 136 F.Supp.2d 1152.

Jill T. Bowers, Deputy Attorney General, Sacramento, California, for the defendants-appellants.

Shelley G. Bryant and Shanee Y. Williams, Certified Law Students; Susan D. Christian, Supervising Attorney, King Hall Civil Rights Clinic, University of California at Davis, for the plaintiffs-appellees.

Appeal from the United States District Court for the Eastern District of California; Lawrence K. Karlton, District Judge, Presiding. D.C. No. CV–96–01582–LKK.

Before: SCHROEDER, CHIEF JUDGE, D.W. NELSON, and RAWLINSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

California State Prison administrators appeal a preliminary injunction granted and later renewed by the district court in a class action brought by Muslim inmates at California State Prison, Solano ("Solano"). The injunctions forbade prison administrators from disciplining inmates for missing work to attend hour-long Friday Sabbath services called Jumu'ah. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Solano is a medium security prison about thirty-five miles southwest of Sacramento. Nearly 4,500 inmates out of a total of about 5,800 are enrolled in the prison's work incentive program, in which every day of participation may reduce their sentences by one day. Inmates serving life sentences cannot receive sentence reduction credits but still participate in the program. Prison administrators assign inmates to appropriate programs "with or without the inmate's consent." Cal. Admin. Code tit. 15, §§ 3040(c) & (f) (2001).

If inmates miss work without the approval of their supervisors, they receive an unexcused absence, known as an "A day," which can be grounds for discipline. Being late or "absent without authorization from a work or program assignment" is an "administrative rule violation," *id.*

at § 3314(a)(3)(H), and "[r]efusal to perform work or participate in a program as ordered or assigned" is a "serious rule violation." *Id.* at § 3315(a)(3)(J). The punishment for such violations includes suspension of privileges, confinement to quarters, forfeiture of up to thirty days of sentence credits, change in work incentive program eligibility, and transfer to a higher level prison. *Id.* at §§ 3314(e), 3315(f), 3323(h), 3375.

The plaintiff class in the present case is comprised of Muslim inmates at Solano. The plaintiffs allege that the work incentive program rules inhibit the free exercise of religion because missing work to attend Jumu'ah services may be grounds for discipline. According to witnesses for the plaintiffs, attendance at these services is commanded by the Qur'an, and these services differ from daily prayer in that they must be held collectively under the leadership of an Imam. *Cf. O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). One of the named plaintiffs, Terrance Mathews, currently has a Friday work assignment and has received unexcused absences for attending Jumu'ah. None of the others currently has a Friday work or education assignment, but in the past, all have either missed Jumu'ah because of work or have received unexcused absences for leaving work to attend services.

On September 3, 1996, the plaintiffs filed suit in the Eastern District of California, seeking declaratory and injunctive relief on a number of issues regarding the treatment of Muslim inmates. The only issue relevant in the present appeal involves Jumu'ah services. The district court certified the class action on November 19, 1998, and allowed the plaintiffs to file a fifth amended complaint on January 28, 2000. On March 29, 2000, a magistrate judge entered findings and recommendations in

support of a preliminary injunction to allow inmates "to attend Jumu'ah services during the pendency of this action without receiving disciplinary action or forfeiting good-time credits." The district court adopted the magistrate's recommendations in an order filed on July 31, 2000. After the injunction was entered, Solano's warden ordered that prison officials must still record unexcused absences for inmates who leave work for Jumu'ah but that such absences would not subject those inmates to discipline. The defendants timely filed an interlocutory appeal of the first injunction.

The district court held that the Prison Litigation Reform Act ("PLRA") mandated that the preliminary injunction expire on October 29, 2000. Nevertheless, the court entered an identical preliminary injunction on December 19, 2000. Again, the defendants filed a timely interlocutory appeal. On March 2, 2001, this panel consolidated the two appeals.[1]

## STANDARD OF REVIEW

 "We reverse the grant of a preliminary injunction only when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Sony Computer Entertainment v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir.2000) (quotations omitted). Standing is a question of law reviewed de novo. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1149 (9th Cir.2000). The district court's exercise of subject matter jurisdiction is reviewed de novo. *Natural Resources Defense Council v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The district court's interpretation of the PLRA is reviewed de novo. *Page v. Torrey*, 201 F.3d 1136, 1138 (9th Cir.2000).

## DISCUSSION

### I. PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

 Appellants argue that the representative plaintiffs lack standing to bring this suit. In order to have standing, plaintiffs must allege "actual or imminent harm"; "merely the status of being subject to a governmental institution that was not organized or managed properly" does not raise a prisoner's claim to the level of a case or controversy. *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In *Lewis,* the Supreme Court held that inmates in Arizona prisons did not have standing by virtue of being prisoners to bring suit alleging that inadequate libraries deprived them of meaningful access to the courts. Rather, to satisfy standing requirements, an inmate must "demonstrate that the alleged shortcomings in the library ... hindered his efforts to pursue a legal claim." *Id.* at 351, 116 S.Ct. 2174.

 The plaintiffs in the present case have standing not merely because they are Muslim prisoners. Rather, one named plaintiff currently has a Friday work assignment and has received unexcused absences for attending Jumu'ah services. The other plaintiffs testified that they have either received unexcused absences for missing work to attend Jumu'ah services or have missed services for fear of facing disciplinary proceedings. Although the others do not presently work on Fridays, prison officials retain the power to change their assignments back to ones that conflict with the Muslim Sabbath. *See* Cal. Admin. Code tit. 15, § 3040. The named plaintiffs either face or have faced the choice between following work incentive program rules and obeying the Qur'an.

---

**1.** On April 5, 2001, the district court entered a third identical injunction. *See Mayweathers*

*v. Terhune,* 136 F.Supp.2d 1152 (E.D.Cal. 2001).

Prison officials do not argue that the named plaintiffs are somehow immune from having to work on Fridays in the future. The prisoners have standing to seek injunctive relief, and a holding to the contrary would allow prison officials to defeat prisoners' claims simply by changing individual plaintiffs' work schedules as soon as they file suit.

## II. THE DISTRICT COURT HAD JURISDICTION TO ENTER A SECOND PRELIMINARY INJUNCTION WHILE THE FIRST ONE WAS BEING APPEALED

■ When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers from the district court to the appeals court. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."). An exception exists under the Federal Rules of Civil Procedure, however, that allows the district court to retain jurisdiction to "suspend, modify, restore, or grant an injunction during the pendency of the appeal ... as it considers proper for the security of the rights of the adverse party." Fed. R.Civ.P. 62(c). Appellants challenge the district court's jurisdiction to grant a second injunction pending an interlocutory appeal of the first.

■ "The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Natural Resources Defense Council Inc. v. Southwest Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir.2001) (citations omitted). Rule 62(c) " 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case.' " *Id.* (quoting *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d

731, 734 (9th Cir.1982)). The district court's exercise of jurisdiction should not "materially alter the status of the case on appeal." *Id.* (citation omitted).

■ The district court in the present case neither changed the status quo at the time of the first appeal nor materially altered the status of the appeal. The defendants argue that the district court enlarged the injunction by ordering briefing on whether to expand it, but this argument is moot because the district court refused to expand the injunction in an order dated March 7, 2001. The defendants further argue that any district court action during the pendency of the first appeal had to be designed to preserve their rights because by the terms of Rule 62(c), they were the "adverse party." The defendants assert this argument without any citations to case law, and it is meritless. The plain language of Rule 62(c) allows the district court to "suspend, modify, restore, or grant an injunction" during the pendency of the defendant's interlocutory appeal, and such action can inure to the benefit of plaintiffs or defendants. In *Southwest Marine,* for example, the district court granted an injunction against the defendant in a citizen suit brought under the Clean Water Act but stayed key enforcement provisions. During the pendency of the appeal, however, the district court lifted the stay and made the provisions more onerous. *Southwest Marine,* 242 F.3d at 1165. Even though the district court's action worked against a defendant who had not been subject to the injunction's provisions at the time of appeal, the modifications of the injunction were held to be in conformity with Rule 62(c). *Id.* at 1167. By contrast, the present case involves defendants who were subject to an injunction at the time of appeal, and the renewed injunction was identical to the original one. In addition, both injunctions have already

expired, so the district court in no way introduced issues that could not be addressed by this court on appeal. *See McClatchy Newspapers*, 686 F.2d at 732–33, 735 (holding that the district court's expansion of an injunction was beyond the scope of Rule 62(c) because reversing the injunction at issue in the interlocutory appeal would not undo the new terms of the injunction). The district court's entry of the second injunction fell within Rule 62(c).

### III. THE PLRA MANDATES THE EXPIRATION OF THE PRELIMINARY INJUNCTIONS 90 DAYS AFTER ENTRY, BUT THE DISTRICT COURT MAY ENTER A NEW INJUNCTION

■ In the first interlocutory appeal, the defendants sought a ruling that the preliminary injunction expired after 90 days because pursuant to 18 U.S.C. § 3626(a)(2), the district court did not make the requisite factual findings and did not make the order final. In the second interlocutory appeal, the defendants argue that the same paragraph of the PLRA governing the expiration of injunctive relief forbids the district court from entering a new preliminary injunction after one expires. The statute provides the following:

> Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief [that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation"] and makes the order final before the expiration of the 90–day period.

18 U.S.C. § 3626(a)(2). Because the district court in the present case did not make either of the preliminary injunctions at issue final within 90 days, both injunctions expired pursuant to this provision.

■ The district court did not, however, violate the terms of the statute by entering the second injunction after the first one expired. Nothing in the statute limits the number of times a court may enter preliminary relief. If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted. The imposition of this burden conforms with how the PLRA governs the termination of final prospective relief. *See* 18 U.S.C. § 3626(b) (providing for the termination of final injunctions by motion of a party unless "the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation"). Therefore, the district court's entry of the second preliminary injunction did not violate the PLRA.

### IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ENTERING THE PRELIMINARY INJUNCTION FORBIDDING PRISON OFFICIALS FROM PUNISHING INMATES WHO ATTEND JUMU'AH SERVICES

■ The defendants make several arguments that the district court abused its discretion by enjoining them from punishing inmates who miss work to attend Jumu'ah services. First, the defendants contend that the injunction establishes Islam as the preferred religion at Solano. This argument is meritless. If the government banned all Sabbath services for all religions, and members of a single faith happened to be the only plaintiffs to file a lawsuit to enjoin the ban, their claim is not defeated because other faiths have failed to pursue as aggressive a litigation strategy.

Second, the defendants argue that the PLRA "limits the district court's authority to order prison administrators to violate State law to ... *final* prospective relief." That limitation simply does not exist in 18 U.S.C. § 3626.

Third, the defendants argue that *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), compels a finding that the prison policies inhibiting Jumu'ah attendance do not impermissibly interfere with the free exercise of religion. *O'Lone* involved a prison program that assigned prisoners of a certain security classification to work details outside the prison. Because of serious security risks involving prisoners' avoidance of work and attempts to return to the prison, the Supreme Court upheld a prison directive prohibiting inmates assigned to outside work detail from returning to the prison, except in the case of emergency. Inmates who wanted to return to the prison for Jumu'ah services sued. *Id.* at 346–47, 107 S.Ct. 2400. The Court upheld the directive in part because Muslim inmates could participate in other religious observances. *Id.* at 351–52, 107 S.Ct. 2400.

Nevertheless, the basic facts of *O'Lone* are distinguishable from the present case. The work program in *O'Lone* involved numerous assignments outside the prison, and in order to attend Jumu'ah services, Muslim inmates would have to be reassigned to preferential jobs. Reorganizing work assignments that were closely tailored to security classifications and giving Muslim inmates preference risked having a serious effect on security and the operation of the work incentive program. *Id.* at 345–47, 352–53, 107 S.Ct. 2400.

The present case, by contrast, involves relief that does not change the operation of the work incentive program at Solano. Rather, the preliminary injunction continues the status quo system of giving inmates "A days" for unexcused absences; the only change is that an "A day" for Jumu'ah attendance is not grounds for discipline. The ability of inmates to participate in other religious observances was but one factor that weighed in favor of the prison administrators in *O'Lone*. It was not dispositive in *O'Lone* nor is it in the present case, and the existence of alternative avenues of religious expression at Solano will be considered below in the proper context of whether the prison rules were rationally related to a legitimate penological purpose.

Fourth, the defendants argue that the district court abused its discretion by citing the observation in *O'Lone* that the Qur'an commands Jumu'ah attendance. The Court in *O'Lone* made an accurate citation to the Qur'an in support of this position, *O'Lone*, 482 U.S. at 345, 107 S.Ct. 2400, and the district court in the present case can hardly be faulted for correctly noting the importance of Jumu'ah.

Fifth, the defendants argue that the district court failed to defer to an assessment by prison administrators that the work incentive program rules were rationally related to a legitimate penological purpose. In order to rule on this issue, we must consider the four factors discussed in *Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), for determining whether a prison regulation that impinges on inmates' constitutional rights is "reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. Under *Turner*, (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) where "there are alternative means of exercising the right that remain open to prison inmates ... courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity

of the regulation"; (3) if "accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials"; and (4) the absence of "ready alternatives" to a particular prison regulation is evidence that it is reasonable and not "an exaggerated response to prison concerns." *Id.* at 89–90, 107 S.Ct. 2254 (citations and internal quotations omitted).

At issue in the present case is whether the prison policy of punishing inmates for missing work to attend Jumu'ah services is rationally related to a legitimate penological purpose. Under the first *Turner* factor, the government has a legitimate interest in making sure inmates attend their work and education assignments, and punishing unexcused absences is validly connected to the goal of high attendance. Under the second factor, although there is no substitute for attending Jumu'ah services, the absence of alternatives does not require a holding in favor of the inmates because they "retain the ability to participate in other Muslim religious ceremonies." *O'Lone*, 482 U.S. at 352. The third and fourth factors, however, weigh solidly in favor of the inmates. The defendants have utterly failed to show any ripple effect among inmates and staff from the narrow scope of the injunction. Prison administrators have implemented the injunction by logging inmates' unexcused absences as always; the only change is that unexcused absences attributable to Jumu'ah attendance are off bounds to the disciplinary process. Unlike *O'Lone*, this remedy does not require that Muslims receive preferential work assignments, and the absence of Muslim inmates for about one hour on Fridays only will not disrupt the operation of the work incentive program. The lack of a ripple effect from the remedy devised by the district court is evidenced by the fact that some inmates may take as many as 16 hours off a month

to receive visitors, attend special religious services, and go to certain recreation and entertainment events. *See* Cal. Admin. Code tit. 15, §§ 3045.2(b) & (e). The excused time off policy also suggests that the fact that inmates of other religions may attempt to attend their own Sabbath services in no way constitutes a significant disruption of the operation of the prison; additionally, given that the strength of the Muslim inmates' claim is derived from the fact that Jumu'ah attendance is compelled by the Qur'an, it is not clear that many non-Muslim inmates will have successful claims. The district court's narrowly tailored injunction is proof that ready alternatives to the prison regulations exist and that the unexcused absence policy under attack in the present case is not rationally related to a legitimate penological purpose.

■ Finally, the defendants argue that the plaintiffs have failed to meet the traditional equitable criteria for granting a preliminary injunction. These criteria are "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest." *Textile Unltd., Inc. v. A.BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001). As the discussion of the *Turner* factors shows, the inmates' likelihood of success on the merits is strong. Additionally, as the district court ably noted, the inmates suffer irreparable injury when they are unable to attend religious services that are commanded by the Qur'an. The remedy imposed by the district court is such a slight change from routine prison practices that the balance of hardships weighs well in favor of the inmates. And the free exercise of religion in prisons is obviously in the public interest. The equitable criteria for granting a preliminary injunction sup-

 

port the district court's actions in the present case.

## CONCLUSION

Therefore, the district court's grant and renewal of the preliminary injunctions are AFFIRMED.